EDWARD WHITE *vs.* CITY OF BOSTON & another.[1]

Suffolk. September 10, 1998. - October 16, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Public Employment,* Police, Accidental disability retirement, Reinstatement of personnel. *Civil Service,* Police, Reinstatement of personnel. *Practice, Civil,* Summary judgment. *Statute,* Construction. *Constitutional Law,* Public employment.

The unambiguous language of G. L. c. 32, § 8 (2), as amended by St. 1996, c. 306, § 16, compels the reinstatement of a civil service employee with a disability retirement once the retirement board determines that the employee is able to return to work and when a vacancy exists, and the approval of the appointing authority is no longer required for such reinstatement; consequently a Superior Court judge correctly entered summary judgment in favor of such an employee on his claim against a municipality for reinstatement. [253-254]

This court concluded that G. L. c. 32, § 8, as amended by St. 1996, c. 306, § 16, which establishes procedures for reinstatement of formerly disabled civil service employees, does not offend the protections against "special privileges" set forth in arts. 6 and 7 of the Massachusetts Declaration of Rights. [254-255]

General Laws c. 32, § 8, as amended by St. 1996, c. 306, § 16, was applicable to a claim for reinstatement made by a formerly disabled civil service employee after the effective date of the amendment. [255]

CIVIL ACTION commenced in the Superior Court Department on November 24, 1995.

The case was heard by *Thayer Fremont-Smith,* J., on motions for summary judgment, and entry of separate and final judgment was ordered by *Charles M. Grabau,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Jed M. Nosal* for the police commissioner of Boston.

*Harold L. Lichten* (*Bryan Decker* with him) for the plaintiff.

*Mary Jo Harris,* for the city of Boston, was present but did not argue.

[1]Police commissioner of Boston.

IRELAND, J. This case concerns G. L. c. 32, § 8, as amended in 1996, which establishes procedures for reinstatement of disabled civil service employees. It presents issues similar to those addressed today in *O'Neill* v. *City Manager of Cambridge, post* 257 (1998). The question before us is whether G. L. c. 32, § 8 (2), mandates that the appointing authority reinstate a formerly disabled employee once the retirement board determines that the employee is capable of returning to work and an appropriate vacancy exists.

The plaintiff, Edward White, began service as a police officer with the Boston police department on June 15, 1970. He was injured in an automobile accident while on duty on September 15, 1980. After an evaluation of these injuries, the State-Boston Retirement Board (retirement board) granted the plaintiff disability retirement, effective August 31, 1981.

In March, 1994, after being retired due to disability for nearly thirteen years, an orthopedic medical panel conducted an evaluation of the plaintiff. The retirement board, acting on the results of that physical evaluation, concluded that the plaintiff was no longer disabled. The city then required the plaintiff to submit to physical and psychological examinations and a background check. In August, 1995, the city denied the plaintiff's application for reinstatement, citing problems discovered during the background check.

The plaintiff filed a complaint in the Superior Court on November 24, 1995, challenging the city's denial of his reinstatement. He renewed his claim under G. L. c. 32, § 8, after the law was rewritten by St. 1996, c. 306, § 16 (Chapter 306).[2] Both sides filed motions for summary judgment. The Superior Court judge allowed the plaintiff's motion for summary judgment on the G. L. c. 32, § 8, claim and ordered the defendants to reinstate the plaintiff.[3] A single justice of the Appeals Court ordered a stay of judgment pending appeal. We granted the plaintiff's application for direct appellate review and now affirm.

Summary judgment will be upheld when, "viewing the

---

[2]General Laws c. 32, § 8, was subsequently amended by St. 1996, c. 427, §§ 2-6. Those amendments, however, did not affect the language challenged here.

[3]The plaintiff also alleged that the defendant discriminated against him in violation of State and Federal law. Some of these allegations are still the subject of litigation and are not addressed here.

evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *McDonough* v. *Marr Scaffolding Co.*, 412 Mass. 636, 638 (1992), quoting *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). We find no error and affirm the judge's order granting the plaintiff's motion for summary judgment. We hold that G. L. c. 32, § 8 (2), compels reinstatement of employees once the retirement board clears them to return to their jobs and once a vacancy exists, and that the approval of the appointing authority is not a prerequisite to reinstatement.

Chapter 306, effective November 7, 1996, changed how the Commonwealth treats civil service employees who have retired for disability. Prior to its amendment, § 8 (2) read:

> "If, as a result of the report of such regional medical panel, the board finds the mental or physical condition of such retired member has so changed that he is physically able to return to the same or a similar position, *the board may, with the approval of the head of any department in which a vacancy exists,* order any such retired member to return and be restored to active service . . ." (emphasis added).

Chapter 306 changed the law to read:

> "If, after two years of the date that a member is retired under section six or seven, the regional medical panel determines that the retired member is qualified for and able to perform the essential duties of the position from which he retired or a similar position within the same department, as determined by the personnel administrator, said member *shall be returned* to said position, provided the position is vacant. If the position has been filled, the member *shall be granted a preference* for the next available position or similar position for which he is so qualified" (emphasis added).

The Legislature removed the language that gave the department head discretion to approve or to reject the reinstatement of a formerly disabled employee and replaced it with the directive that a formerly disabled, but now capable, employee "shall" be returned to the employee's previous position or one similar to it if a vacancy exists.

There is no legislative history for Chapter 306, but there is some evidence of legislative purpose. Both parties acknowledge, either in their briefs or at oral argument, that the legislation was enacted soon after publication of a local media investigation concerning medical retirees.[4] News articles profiled retirees who appeared to be profiting simultaneously from their disability pensions and from private careers, even though some of their private pursuits involved physical demands equal to, or greater than, those that had been imposed on them in their civil service positions.

In addition to the possible reaction to alleged abuses of the disability retirement system, this amendment may be a reaction to our decision in *Milton* v. *Personnel Adm'r of the Dep't of Personnel Admin.*, 406 Mass. 818 (1990). There, we interpreted the earlier version of G. L. c. 32, § 8, and held that the law did not compel reinstatement of retired employees simply because the medical panels found the employees medically capable of returning to work. The former statute explicitly predicated reinstatement on "the approval of the head of any department." We thus rejected the position of the personnel administrator, who argued that physically qualified employees could be reinstated without department head approval. Today, as in *Milton*, we are constrained by clear statutory language.

1. *Discretionary authority.* The defendants urge us to read Chapter 306 as implicating a discretionary power in the police commissioner of Boston (commissioner), who serves as both the appointing authority and department head of the police department.

The statutory language is plain and unambiguous, and we are constrained to follow it. See, e.g., *Santiago* v. *Commonwealth*, 427 Mass. 298, 302 (1998); *Plymouth* v. *Civil Serv. Comm'n*, 426 Mass. 1, 5-6 (1997). This is not a case where following the Legislature's literal command would lead to an absurd result, or one contrary to the Legislature's manifest intention. See *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336

---

[4]This series of investigative articles appeared from May through July, 1996, in The Boston Globe. See, e.g., Cruising on a Broken-Down System; Healthy Public Workers on Disability Enjoy Rich Pensions, Boston Globe, May 12, 1996. Reporters claimed to have discovered 305 "healthy retirees" who had received collectively $33 million dollars in disability pensions. *Id.*

(1982), and cases cited. We decline, therefore, to infer approval by the commissioner as a prerequisite to reinstatement. The Legislature removed all discretionary language when it amended G. L. c. 32, § 8 (2). It clearly demonstrated its intent to direct automatic reinstatement of these employees by replacing the operative language of "may, with the approval of the head of any department" with "shall." See *Commonwealth* v. *Cook,* 426 Mass. 174, 180-181 (1997), and cases cited (interpreting "shall" as mandatory, in accord with general rule of statutory interpretation).

To interpret this statute other than by its express language would render the amendment meaningless. It would mean that the Legislature removed all of the discretionary language from G. L. c. 32, § 8 (2), but somehow left the discretion itself untouched. We refuse to reach this result, one which would be odd in light of the clear statutory language.

The defendants also urge us to look beyond the language of G. L. c. 32, § 8 (2), in order to avoid problems that, they claim, will arise when the law is enforced. Foremost among these is the potential danger arising from a restriction on the power of appointing authorities and department heads to exercise discretion in placing employees, particularly those like police officers, in positions of public trust. Despite these concerns, the language of the statute leaves us no choice, imposing as it does a clear mandate.

The defendants contend that appointing authorities have inherent discretion to tackle issues within their expertise. They assert this as the traditional view in the Commonwealth, a position recognized by other cases, statutes, and common law. See, e.g., St. 1906, c. 291; *Nolan* v. *Police Comm'r of Boston,* 383 Mass. 625, 630 (1981); *Cambridge* v. *Civil Service Comm'n,* 43 Mass. App. Ct. 300, 304-305 (1997). These sources were available to the Legislature when it rewrote G. L. c. 32, § 8. We presume the Legislature considered the discretion traditionally afforded to appointing authorities when it decided to mandate reinstatement regardless of their approval.

2. *Constitutionality of G. L. c. 32, § 8.* We are not persuaded by the defendants' argument that Chapter 306 is unconstitutional because it creates an absolute preference in favor of disability retirees, thus violating arts. 6 and 7 of the Massachusetts Declaration of Rights. The defendants urge us to avoid this supposedly unconstitutional result by construing G. L. c. 32, § 8,

so that discretionary authority remains with the appointing authority.

It is the defendants' view that, if disabled police officers are given an absolute preference over all other candidates, then this preference is similar to those we struck down in a line of cases including *Hutcheson* v. *Director of Civil Serv.*, 361 Mass. 480 (1972), *Commissioner of the Metro. Dist. Comm'n* v. *Director of Civil Serv.*, 348 Mass. 184 (1964), and *Brown* v. *Russell*, 166 Mass. 14 (1896). Those opinions addressed preferences given to military veterans, as a group, over all other applicants for selection as police officers. The preferences were based solely on the candidate's military background, not on qualities specifically related to success on the job. See *Commissioner of the Metro. Dist. Comm'n, supra* at 192.

We decline to hold G. L. c. 32, § 8, unconstitutional. This case is easily distinguishable from those cited by the defendants for two reasons. First, it does not bestow an automatic preference on a group. Case-by-case evaluations are conducted of each individual employee. The retirement board will order reinstatement only after the medical panel evaluates the employee and concludes that the employee is qualified to serve in the same or a similar position. Second, the veterans' cases concerned preferences in initial hiring. Here, disabled employees, once fully qualified, are reinstated to their former positions in the same department now that the disability, which removed them from those positions, has expired.

We disagree with the defendants' constitutional argument because this statute does not offend the protections against "special privileges" contained in arts. 6 and 7. See *Belhumeur* v. *Labor Relations Comm'n*, 411 Mass. 142, 147 n.5 (1991).

3. *Retroactivity.* The defendants argue that the Superior Court judge applied the statute retrospectively. They argue that the preamendment version of G. L. c. 32, § 8, applies to the plaintiff's claim because that law was in effect when the plaintiff first applied for reinstatement.

The defendants' argument lacks merit. The plaintiff was entitled to reinstatement from the date of his renewed demand, not from the date when he first filed his complaint. The plaintiff properly demanded reinstatement after the effective date of Chapter 306 and then, with approval of the Superior Court, supplemented his complaint by adding a claim under Chapter 306.

4. *Conclusion.* Summary judgment for the plaintiff is affirmed.

*So ordered.*